This is a suit for the balance which plaintiff claims is due him by the defendant on an alleged verbal contract which is substantially set out by him as follows in his petition:
On a certain day and date which he does not specifically remember, but which was in August, 1945, he and the defendant entered into a contract for the purchase by the defendant of sweet potatoes, delivered at his canning factory in Ville Platte, at the price and sum of $1.80 per one hundred pounds and, in addition, defendant was to pay the sum of ten cents per hundred pounds as hauling charges. The terms of payment were as follows: The price of the potatoes was to be paid twice weekly, based on the amount sold and delivered during the previous half-week and the hauling fee of ten cents per hundred pounds was to be paid at the end of the season, based on the entire amount of potatoes delivered.
Plaintiff alleges that during the season he sold the defendant 743,806 pounds of potatoes, the last delivery having been made on December 4, 1945, and that defendant has paid him the purchase price agreed on but has not paid him the hauling charges amounting to the sum of $743.80. After averring amicable demand without avail, he prays for judgment against defendant in the sum specified with interest at five per cent from December 4, 1945 and costs.
In his answer defendant admits having purchased sweet potatoes from the plaintiff between August, 1945, and December, 1945, to the amount of approximately 740,000 pounds at the price of $1.80 per hundred pounds for which he has paid plaintiff every time a settlement was due, but he *Page 109 
denies that he had any kind of agreement whatsoever with him to pay any additional ten cents per hundred pounds as hauling charges. Further answering he avers that during the potato season of 1944 he purchased potatoes from the plaintiff in the same manner and under the same method as he did in 1945; that he never paid any hauling charges but to the contrary, plaintiff went out into the fields and bought potatoes at the best market price available to him and then in turn sold them to defendant at a fixed price without any additional agreement for the hauling. Defendant further avers that he has followed this custom of buying potatoes since he has been in the canning business; that he has several buyers purchasing for him and they all operate and do business with him in the same manner as just outlined.
The simple matter before the court as evidenced by the pleadings is whether or not there was a contract between these two parties under which defendant was to pay plaintiff the hauling charges claimed by him in addition to the purchase price of the potatoes. As there is no written or documentary evidence concerning the issue in controversy, the case necessarily has to be decided on the oral testimony of the plaintiff and that of the defendant as corroborated by that of their respective witnesses and by such other facts and circumstances, if any, which may tend to support them.
Plaintiff being the one who declared on a contract under which he seeks to recover, naturally assumed the burden of establishing the same and this he had to do by a preponderance of testimony. The trial judge held that he had carried that burden and rendered judgment in his favor. Defendant has taken this appeal.
The testimony of the plaintiff is to the effect that, with the agreement in mind on the part of Ketteringham to pay him for the hauling charges after the potato season was over, he called at the office and demanded the amount due him. Mr. Ketteringham was not there at the time and his conversation was with Mrs. Ketteringham who apparently conducted the office business. He says that Mrs. Ketteringham told him that she was ready to pay him, but not the full amount he claimed as during the season, Mr. Ketteringham had told him (plaintiff) that he would stop paying him that extra dime. Shortly thereafter, upon having learned that Mr. Ketteringham had returned to the office, he called back and Mr. Ketteringham then insisted that he owed him the hauling charges for only a part of the season as during the season he had told him that he would not pay for the whole season. There were heated Words between them with threats on the part of Ketteringham so he left the office and went to consult an attorney.
Mrs. Ketteringham recalled plaintiff's visit to the office when he made demand for the hauling charges but she testifies that she told him she knew nothing about any agreement to pay such charges and that she would have to ask Mr. Ketteringham about the matter. She told plaintiff that if they were approved he would receive his check. She denies having told him that it was her understanding that Mr. Ketteringham had notified plaintiff during the season that the hauling charges would no longer be paid and that she was willing to pay for them up to the date of that notice but no more. Plaintiff had also stated that at this point in their conversation, Mrs. Ketteringham had turned to one of the young ladies who worked in the office and asked her if she had a record of the date of the notice of discontinuance. This, Mrs. Ketteringham also denied.
From that part of Mrs. Ketteringham's testimony that she would ask her husband about the charges plaintiff claimed and that if they were approved he would receive his check, it is urged that we have corroborating proof that there was an agreement to pay this ten cents hauling charge. The weakness of this argument is easily demonstrated however for Mrs. Ketteringham denies most positively that part of the plaintiff's testimony and even had she told plaintiff what he says she did, it is definitely shown by her testimony and that of Mr. Ketteringham that no one but Mr. Ketteringham himself was authorized to make *Page 110 
any agreements relative to the price to be paid for potatoes and it would not have involved either of them had she as a matter of courtesy, told the plaintiff that she would have to talk to her husband about the matter to find out if he had made such an agreement, and that if he had, the amount would be paid.
Ketteringham of course denies, vehemently, as states the trial judge in his written reasons for judgment, that he had any such agreement with Duos, the plaintiff, or with anyone else. He explains that in operating his canning business he always had a set price for any commodity he bought, whether it was beans, potatoes or anything else. He refers to it as a "support price" fixed by the United States Agriculture Department to prohibit buyers from paying too low a price to the farmer for the commodity he sells. For sweet potatoes the price for 1945 was fixed at $1.80 per hundred pounds and that is what he paid. In that year he canned between ten and twelve million pounds of potatoes which he bought from farmers living as far as Sunset, Scott, Eunice and Arnaudville as well as from local farmers and he paid the same price to all.
From the testimony of the principals in the case therefore, it can hardly he said that plaintiff has produced a preponderance of proof. The trial judge seems to favor the plaintiff because he says that it is hard for him to "conceive that a man of his standing could hatch a plot to extort money from the defendant in such a manner." There is nothing that we find in the record which demonstrates the "standing" of the plaintiff. From their conduct at the time of the interview in defendant's office we would say that both he and the defendant are of a rather impulsive nature or disposition. We may well assume however, that he is a man of good character and standing and yet there is nothing in the record to show that the defendant is not equally so. Judging from the volume of his business and his credit rating he must be quite a substantial and successful business man and there is nothing to suggest that he is a man who would welsh on an obligation of $730 which he has legally contracted to pay.
The trial judge seems to infer the existence of the contract declared on by the plaintiff from what he says is his personal knowledge of similar contracts not only in the potato industry but also in the hauling of cotton to cotton gins, of soy beans to the oil mills, etc., in the 1945 days of keen competition and heavy demand for commodities of this nature. We must bear in mind however, that here plaintiff is relying on a specific verbal contract which he and the defendant personally entered into and not on what is or has been the custom in such matters in this and other related industries. We doubt therefore that the trial judge was within his rights in applying his personal knowledge of such matters even assuming that his knowledge may be correct. Besides, we understand from the defendant's testimony, that he was supplied with all the potatoes he needed to fill the volume of his business and as he seems to have had no keen competition in this immediate area, he did not have any reason, apparently, to pay a premium to any one seller for his potatoes.
Finally, the trial judge, in his written reasons, holds that plaintiff has produced the preponderance of proof by the testimony of three disinterested witnesses who, he says, testified that they had similar contracts with the defendant and that he 'had refused to pay them also. These three witnesses were Voorhies Lafleur, Kelly Chapman and Edison Lafleur. To obtain the full import of their testimony it is necessary to review that of each separately.
Voorhies Lafleur testified that he hauled potatoes for the defendant in 1945; that he paid him $1.80 for ones and twos and that defendant "said he would give him ten cents for a hundred, for the hauling." This ten cents arrangement, as we understand him to state, was a sort of secret agreement. He could recall that it took place at the canning factory but Was unable to state when it was nor any of the circumstances attending it except he remembered later that Ketteringham was entering his automobile, at the factory, when he told him he would pay him this additional amount for hauling. 'After the season was over he endeavored to collect but Ketteringham, told *Page 111 
him that he had forgot to tell him, but he had told Elie Duos that the ten cents Agreement had been called off during the season. Nevertheless, Lafleur then says that Ketteringham refused to pay him and that seems to have ended the matter as far as he was concerned. He didn't sell the defendant more than 2000 pounds for which he was paid, and whilst it is true that the amount of ten cents per hundred which he claimed additionally was small, it strikes us that had he had such a contract with the defendant he would have insisted a bit more than he did to be paid. Ketteringham again denies having made any such agreement with this witness and in fact says that he doesn't even know the man. Mrs. Ketteringham, who, the witness says, was in the office when demand was made for the hauling charges, says that she knows him as one who delivered potatoes to the factory at different times but that he never made any demand for hauling charges as he testified about.
The witness Kelly Chapman does not claim that he had an agreement for the extra ten cents with the defendant himself but testifies that Ray Ardoin, who is employed by Ketteringham, offered to pay $1.80 for potatoes and ten cents extra (presumably for hauling.) He, however, did not haul any potatoes at all that season as it seems he had some sort of agreement with Duos, the plaintiff, that either the one or the other would do the hauling. Ardoin apparently occupied a responsible position at defendant's canning factory and whilst he was authorized to buy potatoes he was restricted by instructions given him regarding the price he was to pay. He did discuss buying potatoes with Chapman and the price agreed on was $1.80 which he states was the same price paid to everybody. He was not authorized to pay any additional amount for hauling. Ardoin's testimony concerning his authority to buy potatoes is corroborated by Ketteringham who states also that it is limited by the price established by him at the beginning of the season.
The witness Edison Lafleur does not claim to have had any agreement with Ketteringham regarding hauling charges. He states that he went to the office one day and asked Mrs. Ketteringham if they wanted potatoes and she told him that if he would haul potatoes they would give him ten cents a hundred for hauling and pay him $1.80 per hundred pounds for the potatoes. He hauled one load and then stopped because when he asked for his hauling fee for that load, Mrs. Ketteringham told him they were not paying the hauling any more. Mrs. Ketteringham denies that she told this witness that they would pay him hauling charges and states that she had no authority to tell him that She further states that upon investigating the files of the office she could find nothing relating to any transaction with this witness.
Against the testimony of these three witnesses, there is found a stiputation in the record to the effect that three other parties, Leon Castille, August Gonsulin, both of Sunset, and Oscar Cormier of Opelousas, would, if they had been placed on the witness stand, all three testify that during the season of 1945, they and each of them sold large quantities of potatoes to the defendant at the fixed price of $1.80 per hundred pounds and that they did not have any agreement to receive an additional ten cents per hundred pounds for hauling them to Ville Platte. It is difficult to understand why plaintiff should have been favored over these sellers when, as shown, his haul was a considerably shorter distance than theirs.
[1, 2] These are the important facts in the case in which we are concerned merely with the application of the rule which requires a plaintiff to prove his case to a legal certainty. It is important too in considering the quality of the proof offered that we keep the provisions of Art. 2277 of the Civil Code in mind. That article requires certain specific proof of contracts relating to movable property when the value exceeds $500. It provides that such contracts must be proved "at least by one credible witness, and other corroborative circumstances." As the contract declared on is one relating to movable property and *Page 112 
the value is in excess of $500, that rule also applies. After carefully considering the entire proof in the record we have concluded that plaintiff has failed to carry the burden which the law thus imposed on him and his demand therefore has to be rejected.
For the reasons stated it is ordered that the judgment appealed from be and the is hereby reversed and set aside, and
It is further ordered that there be judgment in favor of the defendant and against the plaintiff rejecting the latter's demand and dismissing his suit at his costs.